IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00306-WJM-MEH

LEONARD E. LOVE,

     Petitioner,

v.

CHARLES A. DANIELS,

     Respondent.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

MICHAEL E. HEGARTY, United States Magistrate Judge.

Before the Court is Petitioner Leonard E. Love's amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [filed March 1, 2012; docket #5]. In accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation. The Application is fully briefed, and oral argument would not materially assist the Court in its adjudication. Based on the record contained herein, the Court RECOMMENDS that Petitioner's amended Application be **denied**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*,

## FACTUAL BACKGROUND

Petitioner is serving a 300-month term of imprisonment at the United States Penitentiary in Beaumont, Texas, based on his convictions for bank robbery, armed bank robbery, and knowingly using and brandishing a firearm during and in relation to a crime of violence. (Docket # 24-1, attach. 1; Docket # 5 at 2 of 11.) Petitioner's projected release date from federal custody is July 31, 2025, via good conduct time release. (Docket # 24-1, attach. 1.)

On February 6, 2012, Petitioner, proceeding *pro se*, initiated this action by filing an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Docket #1.) He filed an amended application on March 1, 2012. (Docket # 5.) Petitioner challenges the constitutionality of two disciplinary convictions that he received while he was incarcerated at the Federal Correctional Institute in Allenwood, Pennsylvania. Incident Report (IR) Numbers 2073264, 2165470, and 2170548 are relevant to this proceeding.

### I. IR No. 2073264

Petitioner received IR No. 2073264 on October 1, 2010, for the following misconduct:

> On October 1, 2010, inmate Love Leonard (65927-061) was interviewed in regards to illicit activity involving the inmate telephone system, the TRULINCS e-mail system, and inmate institutional mail. Specifically, Inmate Love would utilize the telephone and email to instruct Ms. Carmen Promes on the construction, update and maintenance of a website to include the charge for services rendered. . . [and] would mail out another inmate's photos to Ms. Promes with instructions, either in the letter subsequent, phone call or email on what the other inmate wanted and who to mail it to.

(Docket # 40-2, attach. P.) Petitioner was charged with "Use of the telephone for abuse other than criminal activity" (code 297) and "Unauthorized use of the mail" (code 410). (Docket # 24-1,

---

950 F.2d 656, 659 (10th Cir.1991).

attach. 2.) On October 6, 2010, the charges were heard by a Unit Discipline Committee ("UDC"). Petitioner admitted to the charges at the UDC hearing. (*Id.*) He was sanctioned with sixty days loss of phone privileges and thirty days loss of visitation privileges.[2] (*Id.*)

## II. IR No. 2165470

Petitioner received IR No. 2165470 on May 20, 2011 after staff members discovered that he had utilized the inmate e-mail system (TRULINCS), to contact a chief probation officer without properly identifying himself as an inmate. (Docket # 24-1, attach. 3, ¶¶ 11, 12.) The incident report stated that Petitioner engaged in this conduct through use of a third party and without staff authorization. (*Id.*) Petitioner was charged with "Conduct disruptive to the orderly running of a BOP facility" most like "Use of telephone for abuse other than criminal activity" (codes 297 and 299), and "Unauthorized contact with the public" (code 327). (*Id.* ¶ 9.) A UDC hearing was held on May 24, 2011. (*Id.* § 21.) The UDC referred the charges to the Disciplinary Hearing Officer ("DHO") for further hearing and advised Petitioner of his right to appeal that decision within fifteen days. (*Id.* § 18.) The same day, Petitioner was provided with a formal "Notice of Discipline Hearing before the (DHO)," and a copy the "Inmate Rights at Discipline Hearing." (Docket # 24-1, attachs. 4 and 5.) Petitioner requested a staff representative and to have three witnesses present at the hearing. (*Id.* attach. 4.)

The disciplinary hearing was held on June 3, 2011. (Docket # 24-1, attach. 6 § I(B).) The DHO Report reflects that Petitioner waived his request for witnesses and for a staff representative

---

[2]According to Respondent, a disciplinary hearing was not held because Petitioner admitted to the charges in the incident report and the infractions were minor such that they did not warrant being referred to the disciplinary hearing officer for further processing. (Docket # 24, at 3 of 16, citing 28 C.F.R. § 541.7.)

prior to the commencement of the hearing. (*Id.* § III(C)(2); *see also* Docket # 24-1, attach. 4.) At the conclusion of the disciplinary hearing, the DHO found that Petitioner had engaged in "Conduct disruptive to orderly running of a BOP facility" most like "Use of telephone for abuse other than criminal activity" (codes 297 and 299).[3] (*Id.* attach, 6, § IV.) The DHO relied on the incident report and BOP's investigation, two memorandums prepared by witnesses, and e-mails sent by Petitioner. (*Id.* § III(C).) In particular, the DHO considered e-mails sent by the Petitioner to a third party with instructions to contact a chief probation officer (USPO Johnson) and the messages to send, which corroborated the incident report. (*Id.* § V.) In addition, a statement from a staff member confirmed that the chief probation officer was not aware that he had been communicating with an inmate. (*Id.*)

The DHO imposed the following sanctions: (1) thirty days in disciplinary segregation; (2) twenty-seven days disallowance of good conduct time; (3) fifty days forfeiture of non-vested good conduct time; (4) eight months loss of e-mail privileges; and (5) eight months loss of visitation privileges. (*Id.* § VI.) Petitioner was provided with a copy of the DHO's decision and informed of his right to appeal the decision. (*Id.* §§ VIII-IX.)

### III. IR No. 2170548

Petitioner received IR No. 2170548 on June 3, 2011 after a search of his telephone and email records revealed that he had used the telephone and e-mail to instruct a third party on the construction, update, and maintenance of a website, blog, and Facebook page. (Docket # 24-1, attach. 7, ¶ 11.) In addition, prison staff searched Petitioner's property and found several photo albums with his photo and various backgrounds that were available for purchasing for the purposes

---

[3]The DHO also found that the charge for "Unauthorized contact with the public" (code 327) to be duplicative and expunged it from the report. (*Id.* attach. 6, § V.)

of photo-shopping a personal image onto a background. (*Id*.) Prison staff also discovered that Petitioner had sent a third party another inmate's photos and provided instructions on what the other inmate wanted and where to mail the photo. (*Id*.)

Petitioner was charged with the following violations of Inmate Disciplinary Code: (1) "Conduct disruptive to orderly running of a BOP facility" most like "Use of telephone for abuse other than criminal activity" (codes 297 and 299); (2) "Unauthorized contact with the public" (code 327); (3) "Conducting a business" (code 408); and (4) "Unauthorized use of the mail" (code 410). (*Id.* §§ 9-10; *see also* Docket # 40-2, attach. O.) A UDC hearing was held on June 7, 2011. (Docket # 24-1, attach. 7, § 21.) The UDC referred the charges to the DHO for further review and advised Petitioner of his right to appeal that decision within fifteen days. (*Id.* § 18.) The same day, Petitioner was provided with a "Notice of Discipline Hearing Before the (DHO)," and a copy of the "Inmate Rights at Discipline Hearing." (*Id.* attachs. 8 and 9.) The Notice of Disciplinary Hearing reflects that Petitioner declined to have a staff representative and waived his right to call witnesses. (*Id.* attach. 8.)

The disciplinary hearing was held on June 16, 2011. (Docket # 24-1, attach. 10.) During the hearing, the DHO considered a report of Petitioner's e-mails sent between January 1, 2009, and June 3, 2011; a report of Petitioner's e-mail list dated June 3, 2011; a packet of photocopies of information to set up a prohibited website; and e-mail correspondence between Petitioner and a third-party. (*Id*. § III(D).) E-mails sent by Petitioner referred to FI, LLC, which is a business that charged a fee to establish Facebook profiles and maintain web pages for inmates. (*Id*. § V.) Based on the emails Petitioner sent to the third party, the DHO found that the "e-mail correspondence clearly indicate LOVE running a business and orchestrating that business via e-mail." (*Id*.) Among

Petitioner's property were several handwritten notes indicating the operation of another business, Lovepress.com, which offers to Photo-shop personal photos onto different landscapes for nominal costs. (*Id*.)  The handwritten notes also outlined the price of the photos by size and quantity and what to charge for pen-pal services. (*Id*.) Other inculpatory evidence included that over a four-month period, Petitioner received $1790.00 from a third-party, supporting the evidence that this third party had taken over part of Petitioner's outside, unauthorized business. (*Id*.)

Petitioner argued that the evidence was old.  However, the DHO found that Petitioner's recent correspondence dated April 19, 2011–less than two months before the hearing–showed his continued efforts to maintain a lucrative business with a third-party. (*Id*.)  At the conclusion of the hearing, the DHO found that Petitioner committed the act of "Conduct disruptive to orderly running of a BOP facility" most like "Use of a telephone for abuse other than criminal activity" (codes 297 and 299), and "Conducting a business" (code 408).  (*Id*.)[4]

The DHO imposed the following sanctions: (1) 60 days disciplinary segregation; (2) fifty-four days disallowance of good conduct time; (3) 250 days forfeiture of non-vested good conduct time; (4) three years loss of e-mail privileges; (5) six months loss of commissary privileges; (6) six months loss of phone privileges; (7) six months loss of visitation privileges; and (8) a disciplinary transfer.  (*Id*. § VI.)  Petitioner was provided with a copy of the DHO's decision and informed of his right to appeal the decision. (*Id*. §§ VIII-IX.)

---

[4]The DHO further found that the charges for "Unauthorized contact with the public" (code 327) and "Unauthorized use of the mail" (code 410) to be duplicative and expunged them from the report. (*Id*.)

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Respondent has informed the Court that he will not raise the affirmative defense of exhaustion of administrative remedies. (Docket # 12.)

**LEGAL STANDARD**

A federal court must construe a pro se plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The court should not be the pro se litigant's advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

A section 2241 habeas proceeding is "an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *McIntosh v. U.S. Parole Common*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). A section 2241 petition may challenge the deprivation of good-time credits and other prison disciplinary matters where the challenged action affects duration of the inmate's sentence. *Id.* at 811-12. "A petition under 28 U.S.C. § 2241 attacks the execution of a sentence rather than its validity and must be filed in the district where the prisoner is confined." *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir.1996). Petitioner has correctly filed his Application pursuant to 28 U.S.C. § 2241 in the District of Colorado where he was incarcerated at the time he initiated this action.

## ANALYSIS

Petitioner challenges his prison disciplinary convictions resulting from IR Nos. 2165470 and 2170548. He asserts in claim one that his federal due process rights were violated when he was deprived of good time credits (in connection with IR No. 2170548) based on disciplinary conduct for which he was previously sanctioned (IR No. 2073264). (Docket # 5, at 5 of 11.) He further claims that the charges were based on false statements by prison staff in order to increase his sanctions to include the loss of good time. (*Id.* at 6.) Petitioner contends in his second claim that his due process rights were violated with regard to IR No. 2165470 when he was not allowed to present a defense of innocence at the prison disciplinary hearing. (*Id.* at 8.) In claim three, he maintains that his due process rights were violated when prison staff members retaliated against him by charging him falsely with violations of Codes 297/299 and 408 in IR No. 2170548 after he expressed an intent to seek judicial relief for the charges in IR No. 2165470. (*Id.* at 10 of 11.)

"It is well settled 'that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment.'" *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007) (applying law to federal prisoner) (quoting *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir.1996) (internal quotation marks and citation omitted). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

> Where a prison disciplinary hearing may result in the loss of good time credits, . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). Further, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.* (internal citation and quotation marks omitted). "Ascertaining whether this standard is satisfied does not require examination of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. A disciplinary board's decision can be upheld by a reviewing court "even if the evidence supporting the decision is 'meager.'" *Mitchell v. Maynard*, 80 F.3d at 1443, 1445 (10th Cir. 1996) (quoting *Hill*, 472 U.S. at 457).

## I. Claim One

Petitioner first claims that his due process rights were violated in relation to IR Nos. 2073264 and 2170548 because he lost good time credit based on conduct for which he had been charged previously and sanctioned. He asserts that the IR was based on "false statements made by BOP staff as to when the SIS department became aware of the alleged subsequent incident which supported the disciplinary charge." (Docket # 5, at 6.)

As an initial matter, "[b]ecause the Double Jeopardy clause applies [only] to proceedings that are essentially criminal in nature, . . . it is well established that prison disciplinary sanctions . . . do not implicate double jeopardy protections." *Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006) (citing *Breed v. Jones*, 421 U.S. 519, 528 (1975)) (quotations omitted).

Moreover, Petitioner's claim fails because the two incident reports are based on separate instances of misconduct. Petitioner received IR No. 2073264 on September 27, 2010 and admitted

to the misconduct on October 6, 2010. Petitioner received IR 2170548 on June 3, 2011. At the disciplinary hearing on IR No. 2170548, the DHO rejected Petitioner's argument that the charges were based on "old" conduct because Petitioner's correspondence dated April 19, 2011 showed his continued efforts to maintain a lucrative business with a third party. (Docket # 24-1, attach. 10 §V.) Accordingly, although the charges in the two incident reports assert similar misconduct, they are based on distinct events. Petitioner thus is not entitled to habeas relief for his first claim.

## II. Claim Two

Petitioner contends in his second claim that his due process rights were violated with regard to IR No. 2165470 when he was not allowed to present a defense of innocence at the prison disciplinary hearing and the BOP withheld exculpatory evidence. (Docket # 5, at 8.)

Petitioner does not dispute that he received notice of the charges against him approximately a week before the DHO hearing, that he was notified of his rights to have a staff representative present and to present witnesses and documentary evidence in his defense, or that he received a copy of the DHO Report.

There is a conflict in the evidence about whether Petitioner waived his right to staff representation at the DHO hearing. (Docket # 24-1, attach. 4; attach. 6, at § II.E; Docket # 40-1, at ¶ 17.) However, a prisoner does not have a constitutional right to representation at a prison disciplinary hearing where the inmate is not illiterate and the issues are not complex. *See Wolff*, 418 U.S. at 570; *see also Abdulhaseeb v. Ward*, No. 05-6054, 173 F. App'x. 658, 661 (10th Cir. Mar. 27, 2006) (unpublished).

There is also a conflict in the evidence about whether Petitioner waived his right to present witness testimony and documentary evidence at the DHO hearing. (Docket # 24-1, attach. 6, §1(b);

Docket # 40-1, at ¶ 17.) The scope of an inmate's right to call and confront witnesses and present documentary evidence in a prison disciplinary proceeding is committed to the sound discretion of prison officials who must exercise their discretion on an individualized basis. *See Ramer v. Kerby*, 936 F.2d 1102, 1104 (10th Cir. 1991). Errors made by prison officials in denying evidence at hearings are subject to harmless error review. *See Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006); *see also Chesson v. Jaquez*, 986 F.2d 363, 366 (10th Cir.1993). Moreover, an inmate cannot maintain a due process claim for failure to permit witness testimony or documentary evidence unless he shows that the testimony "'would have affected the outcome of his case.'" *Grossman*, 447 F.3d at 805 (quoting *Chesson*, 986 F.2d at 366).

Petitioner states in his Affidavit that before the hearing he requested the opportunity to review recorded telephone calls between him and USPO Johnson, which would have confirmed that Johnson was aware of his inmate status, but that his request for this evidence was denied by the DHO. (Docket # 40-1, at ¶¶ 15-17.) Petitioner asserts that the inmate telephone records were exculpatory because they "would have demonstrated that he not only called and spoke with USPO Johnson–but that the alleged inculpatory evidence on which the DHO relied was false." (Docket # 40, at 3.) The Court finds that Petitioner's telephone conversations with USPO Johnson on earlier dates do not refute the charge upon which the DHO found him guilty: that he bypassed the TRULINCS system on May 18, 2011, and engaged in the unauthorized use of email to contact Johnson through a third party. Accordingly, because evidence of the phone records would not have aided Petitioner's defense, the BOP's failure to produce the records to Petitioner was harmless.

Petitioner also asserts that he was denied the opportunity to call BOP Counselor Simmons as a witness at the hearing to testify who Simmons asked Petitioner to contact USPO Johnson to

confirm Johnson's presence at the prison program at a particular time. (*Id.* at 5.) BOP regulations provide that the inmate may call witnesses that are "reasonably available" but that a witness' statement may be submitted in writing. See 28 C.F.R. § 541.17(c). Petitioner avers that after he received IR 2165470 on May 19, 2011, he requested that Counselor Simmons be called as a witness in his defense of the disciplinary charges. (Docket # 40-1, ¶ 13; *see also,* Docket # 24-1, attach. 3.) Petitioner again requested Counselor Simmons as a witness at the UDC hearing on May 24, 2011, but was informed by prison staff that Simmons "had provided a memorandum supporting [Petitioner's] violation of disciplinary policy." (Docket # 40-1, ¶ 14; Docket # 24-1, attach. 3.) The DHO considered Counselor Simmons' written statement to prison officials in response to the incident report and found Petitioner guilty as charged. (Docket # 24-1, attach. 6, at § III.D.) Therefore, Petitioner has not demonstrated that Counselor Simmons' testimony "'would have affected the outcome of his case.'" *Grossman*, 447 F.3d at 805 (quoting *Chesson*, 986 F.2d at 366). Furthermore, the record reflects, and Petitioner does not state any facts to dispute, that he did not continue to pursue his request to have Counselor Simmons appear at the DHO hearing as a witness in his defense after he was informed at his UDC hearing that Simmons had submitted a memorandum that supported the disciplinary charge(s). (*Id.* attach. 4; Docket # 40-1, at ¶ 14.)[5]

---

[5]To the extent Petitioner asserts that he was effectively denied the opportunity to call the three witnesses he requested following the UDC hearing (Worthy, Martin and Knight), *see* Docket # 24-1, attach. 4, he does not explain how the testimony of those witnesses would have exonerated him. As such, any error in excluding these witnesses from testifying did not prejudice Petitioner. *See Grossman*, 447 F.3d at 805.

12

Petitioner asserts that he was not allowed to present a defense at the hearing and submits an Affidavit in support of his innocence.[6] However, Petitioner does not assert that the DHO prevented him from telling his side of the story at the hearing. Indeed, the DHO Report reflects that Petitioner made the following statement in his defense: "It's a misunderstanding; I've been in contact with Mr. Johnson for the past eight months and he knows I am an inmate. I wrote him letters about speaking at the mentor program I developed." (Docket # 24-1, attach. 6 at § III.B.) Petitioner further stated, "I did everything with Mr. Simmons' approval and I admit I had my friend (Sonya Wallace) forward the emails to Mr. Johnson." (*Id.*) The DHO considered Petitioner's oral statements, along with Counselor Simmons' written statement, in reaching his decision. Thus, Petitioner's contention that he was not allowed to present a defense is without merit.

The DHO found that Petitioner committed the charge of Conduct disruptive to the orderly running of a BOP facility most like use of the telephone for abuses other than criminal activity (TRULINCS), Code 299 most like 297. (*Id.* § V.) The DHO relied on information contained in the incident report, including the staff member's detailed discussion of inculpatory emails from the

---

[6]Petitioner states the following facts in his Affidavit. In April 2010, Petitioner created a mentoring program for inmates at FCI-Allenwood, Pennsylvania, called "MEN 101." (Docket # 40-1, ¶ 2.) Petitioner wrote to USPO Johnson on several occasions to solicit his assistance with the program. (*Id.* ¶ 4.) BOP Counselor Simmons authorized implementation of the program at FCI-Allenwood and monitored the program's operations. (*Id.* ¶ 5.) At the graduation ceremony, Counselor Simmons announced to the inmates that USPO Johnson would speak to them at a special ceremony to be held at a later date. (*Id.* ¶ 6.) On May 10, 2011, Counselor Simmons called USPS Johnson, in Petitioner's presence, and scheduled Johnson to speak at the facility on May 19, 2011. (*Id.* at ¶ 7; *see also* Docket # 40-2, attach. E.) Simmons advised Johnson that he would contact him later to confirm the exact time of the ceremony. (Docket # 40-1, ¶ 7.) Prior to the date of the ceremony, Simmons told Petitioner that he had not been able to speak to Johnson by telephone and asked Petitioner to contact Johnson regarding the specifics of the program. (*Id.* ¶ 9.) On May 18, 2011, Petitioner asked an individual outside the prison to send two emails to USPO Johnson about the May 19, 2011 ceremony. (*Id.* ¶10.)

13

Petitioner to third persons, as well as a memorandum from a BOP administrative person who attempted to assist Chief USPO Johnson when he arrived at the facility to speak at the mentor program ceremony. (*Id.*)  In imposing the sanction of forfeiture of good time credits, the DHO stated:  "[Petitioner's] misuse of TRULINCS threatened the security and orderly running of the institution. [Petitioner's] making a three-way correspondence via email bypassed the TRULINCS monitoring procedures established at this institution." (*Id.* § VII.)

The information provided in a written incident report, standing alone, can satisfy the "some evidence" standard.  *Hill*, 472 U.S. at 456 (prison guard's copies of his written report supported conclusion that the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process Clause); *Hudson v. Johnson*, 242 F.3d 534, 536–37 (5th Cir. 2001) (information contained in an incident report is "some evidence" of inmate's guilt); *see also Smith v. Samu,* No. 97–1570, 1995 WL 275720, at *2 (10th Cir. May 10, 1995) (unpublished decision) (rejecting claim that it was improper to rely on prison guard's report because it was hearsay).

Accordingly, because Petitioner received the due process protections outlined by *Wolff* and *Hill* in connection with his disciplinary proceeding for IR No. 2165470, he is not entitled to federal habeas relief.

## III.  Claim Three

Petitioner asserts in claim three that his due process rights were violated when prison staff members retaliated against him by charging him falsely with violations of Codes 297/299 and 327 in IR No. 2170548 after he expressed an intent to seek judicial relief for the charges in IR No. 2165470.

### A. Unlawful Retaliation

A prisoner claiming retaliation must "allege specific facts showing retaliation [on account] of the exercise of the prisoner's constitutional rights," *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990), and he "must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990).

Assuming that Petitioner's expressed intent to seek legal action was constitutionally protected, the record does not indicate that either the conduct of the staff member in filing the charges against Petitioner in IR No. 2170548 or the DHO's determination of guilt and imposition of a substantial sanction "would not have occurred but for the hostility or punitive animus toward the [Petitioner] because he exercised his specific legal right." *United States v. Contreras*, 108 F.3d 1255, 1262 (10th Cir. 1997) (emphasis in original); *see also Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir. 1998) (prisoner claiming retaliation for exercising First Amendment rights "must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place.") (internal citation and quotation marks omitted).

According to Petitioner, after he told an SHU lieutenant that he intended to file a judicial complaint challenging the false disciplinary charges in IR No. 2165470 (issued on May 19, 2011), the lieutenant responded that Petitioner was going to receive additional incident reports "to assure that something would stick so that [Petitioner] could be transferred out of the facility." (Docket # 5, at 10 of 11.) Petitioner then received IR No. 2170548 on June 3, 2011. However, even if the lieutenant did make the statement that Petitioner attributes to him, there was some evidence in the record to support the DHO's conviction. Specifically, the DHO considered Petitioner's emails from

January 1, 2009 through June 3, 2011, his email list dated June 3, 2011, a packet of information to set up an illegal website, and email correspondence between Petitioner and a third party, including an email dated April 19, 2011 in which Petitioner states to the third party: "All we are is business partners on what we created. . . . I only ask you to help me monthly and do certain things and I was willing to give you up to 80% of what all three FI LPP and LD brings in." (*Id.* attach. 10, at § V.) The DHO found that the email correspondence "clearly indicate[s] LOVE running a business and orchestrating that business via email." (*Id.* § V.)

"[A] prisoner cannot maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction." *O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011) (citations omitted); *see also Hartsfield v. Nichols,* 511 F.3d 826, 829 (8th Cir. 2008) (involving allegations of false disciplinary reports and concluding "claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule").

Accordingly, because Petitioner was convicted of the charges in IR. 2170548 and there was evidence in the record to support the disciplinary conviction, his retaliation claim fails.

**B.  Due process challenge**

Furthermore, to the extent Petitioner challenges the due process protections he received at the prison disciplinary proceeding, he was not deprived of his constitutional rights. The record demonstrates that Petitioner received notice of the disciplinary hearing approximately nine days before the hearing. (Docket # 24-1, attach. 8.) Although Petitioner disputes that he waived his right to have a staff representative at the hearing and to present documentary evidence,[7] he does not

---

[7]*See* Docket # 40-1, ¶¶ 21-23.

describe the nature of the documentary evidence or how it would have established his innocence. *See Grossman*, 447 F.3d at 805.

Petitioner stated in his defense at the hearing that he "helped Ms. Pommes with the business but I did not receive any money for a business." (*Id.* attach. 10.) Petitioner further stated that "'Friendly inmates' is Ms. Pommes' business that I helped her to build." (*Id.*)

Petitioner received the DHO's written report showing the evidence the DHO relied upon in support of the disciplinary conviction and the reasons for the disciplinary action. (Docket # 24-1, at attach. 10.) As discussed above, there was some evidence in the record to support the DHO's finding that Petitioner committed the charges offenses of "Use of the telephone [internet] for abuse other than criminal activity" and "Conducting a business." As such, Petitioner is not entitled to habeas corpus relief for his third claim.

## **CONCLUSION**

For the reasons stated above, this Court respectfully RECOMMENDS that the amended Application for A Writ Of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [filed March 1, 2012; docket #5] be **DENIED**.

Dated at Denver, Colorado this 31st day of October, 2012.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge